# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIAM HARDY,<br><br>                        Plaintiff,<br><br>   v.<br><br>MABVAX THERAPEUTICS HOLDINGS, *et al*.,<br><br>                       Defendants. | Case No. 18-cv-01160-BAS-NLS<br>Case No. 18-cv-01819-BAS-NLS<br><br>**ORDER:**<br><br>**(1)**   **CONSOLIDATING CASES,**<br><br>**(2)**   **APPOINTING LEAD PLAINTIFF,**<br><br>       **AND**<br><br>**(3)**   **APPROVING SELECTION OF LEAD COUNSEL**<br><br>**[ECF Nos. 3, 4, 5]** |
| JERRY VINSON,<br><br>                        Plaintiff,<br><br>   v.<br><br>MABVAX THERAPEUTICS HOLDINGS, *et al*.,<br><br>                       Defendants. | |

     This is a federal securities class action pertaining to allegedly false and misleading statements made by Defendant MabVax Therapeutics Holdings ("MabVax"), an entity whose subsidiaries develop human anti-body based products

and vaccines to address medical needs and treatment of certain diseases.

Before the Court is a set of three motions related to the appointment of a lead plaintiff and lead counsel in the litigation against MabVax as well as MabVax's CEO, Defendant J. David Hansen, and MabVax's CFO, Defendant Gregory P. Hanson. Sandor Capital Master Fund, JSL Kids Partners, and John Lemak move, as the Lemak Investor Group (collectively, "Lemak"), to: (1) consolidate complaints in two actions against MabVax, *Liam Hardy v. MabVax Therapeutics, et al.*, No. 18-cv-01160-BAS-NLS, and *Jerry Vinson v. MabVax Therapeutics, et al.*, No. 18-cv-01819-BAS-NLS; (2) appoint Lemak as Lead Plaintiff in the consolidated case; and (3) approve Lemak's selection of Glancy Prongay & Murray LLP as Lead Counsel. (ECF No. 4.) Kevin Lappi ("Lappi") and the Friscia Family have each filed a motion for their appointment as Lead Plaintiff and approval of their choice of Lead Counsel. (ECF Nos. 3, 5.) Lemak and the Friscia Family have opposed each other's motion and replied in support of their own motion. (ECF Nos. 7–10.) Lappi has not opposed or responded to either Lemak's or the Friscia Family's respective motion.

For the reasons herein, the Court: (1) grants Lemak's request to consolidate the *Hardy* and *Vinson* actions, (2) appoints Lemak as Lead Plaintiff, and (3) approves Lemak's selection of Lead Counsel.

**ANALYSIS**

**A.    Consolidation of the *Hardy* and *Vinson* Actions Is Appropriate**

Federal courts have "broad discretion . . . to consolidate cases pending in the same district." *Investors Research Co. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989). Federal Rule of Civil Procedure 42(a) generally permits a district court to consolidate actions when the actions involve a "common question of law or fact." Fed. R. Civ. P. 42(a). The Private Securities Litigation Reform Act of 1995 ("PSLRA") contemplates consolidation when "more than one action on behalf of a class asserting substantially the same claim or claims . . . has been filed," and requires a district court to decide whether to consolidate prior to the

selection of a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii). "Courts have recognized that class action shareholder suits are particularly well suited to consolidation pursuant to Rule 42(a) because unification expedites pretrial proceedings, reduces case duplication, avoids the need to contact parties and witnesses for multiple proceedings, and minimizes the expenditure of time and money for all parties involved." *Hessefort v. Super Micro Comput., Inc*., 317 F. Supp. 3d 1056 (N.D. Cal. 2018) (citation omitted).

Lemak has moved to consolidate the *Hardy* and *Vinson* actions. (ECF No. 4.) Both complaints allege claims against the same three defendants pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 based on alleged false or misleading representations about MadVax's internal controls over financial reporting as well as MadVax's alleged incorrect calculation and reporting of beneficial ownership of MabVax shares and permitting the exercise of improper influence over it. (*Compare Hardy*, No. 18-cv-1160, ECF No. 1 *with Vinson*, No. 18-cv-1819, ECF No. 1.) These common questions of law and fact weigh in favor of consolidation.

There are, however, two differences between the actions. First, the *Hardy* class period is from March 14, 2016 to May 18, 2018, whereas the *Vinson* class period is from June 30, 2014 to May 18, 2018. (*Id*.) Second, whereas the proposed *Hardy* class is comprised of "all purchasers of common stock of MabVax," the proposed *Vinson* class is comprised of "all individuals and/or entities that purchased or otherwise acquired the securities of MabVax" during the class period. (*Id*.) Despite these differences, the Friscia Family expressly does not oppose consolidation of the actions. (ECF No. 8 at 2 n.2.)

In the Court's view, the particular differences between the *Hardy* and *Vinson* actions do not outweigh the interests of judicial economy served by consolidation. *See Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences

do not outweigh the interests of judicial economy served by consolidation."). The class periods and the class definitions overlap considerably and the complaints are otherwise similar. Accordingly, the Court grants Lemak's request to consolidate.

**B.     Appointment of Lead Plaintiff**

Pursuant to the PSLRA, the district court "shall appoint as lead plaintiff the member or members of the purported class that the court determines to be the most capable of adequately representing the interest of the class members[.]" 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff should be the plaintiff who: (1) has filed the complaint or brought the motion for appointment of lead counsel in response to the publication of notice, (2) has the "largest financial interest" in the relief sought by the class, and (3) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc). The presumption may be rebutted only upon proof that the presumptive lead plaintiff: (1) will not fairly and adequately protect the interests of the class or (2) is subject to "unique defenses" that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb).

By its terms, the PSLRA "provides a simple three-step process for identifying the lead plaintiff" in a private securities class action litigation. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). "The first step consists of publicizing the pendency of the action, the claims made and the purported class period." *Id*. At the second step, "the district court must consider the losses allegedly suffered by the various plaintiffs," and select as the "presumptively most adequate plaintiff . . . the one who has the largest financial interest in the relief sought by the class and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id*. at 729–30 (internal citations omitted). Finally, at the third step, the district court "give[s] other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id*. at 730.

The Court undertakes each of these steps for the consolidated action.

### 1. Preliminary Procedural Requirements

Pursuant to the PSLRA, a plaintiff who files a securities litigation class action must provide notice to class members via publication in a widely-circulated national business-oriented publication or wire service within 20 days of filing the complaint. 15 U.S.C. § 78u-4(a)(3)(A)(I). The notice must: (1) advise class members of the pendency of the action, the claims asserted therein, and the purported class period; and (2) inform potential class members that, within 60 days of the date on which notice was published, any members of the purported class may move the court to serve as lead plaintiff in the purported class. 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)–(II).

The *Hardy* action—the first of the two consolidated securities class actions—was filed in this District on June 4, 2018. (ECF No. 1.) Notice was published in *Business Wire* the same day by the law firm Glancy Prongay & Murray LLP. (ECF No. 4-3 Prongay Decl. Ex. A; ECF No. 5-3 Sadeh Decl. Ex. A.) The notice was timely published within 20 days after the filing of the complaint, it lists the claims and the class period, and it advises putative class members that they had 60 days from the date of the notice to file a motion to seek appointment as lead plaintiff in the lawsuit. *See* 15 U.S.C. § 78u-4(a)(3)(A). Each movant also filed a motion for appointment as lead plaintiff within the allotted sixty-day period. Thus, notice in the *Hardy* action is proper and the movants have satisfied the statutory procedural requirements for moving to be appointed as a Lead Plaintiff.

### 2. Lemak is the Movant with the Largest Financial Interest

The PSLRA mandates that the district "court shall consider any motion made by a purported class member in response to the notice . . . and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interest of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA creates a presumption that the most capable plaintiff is the one who "in the determination of the court, has the

largest financial interest in the relief sought by the class," but the PSLRA does not specify a method to ascertain "financial interest." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *see also Inchen Huang v. Depomed, Inc.*, 289 F. Supp. 3d 1050, 1052 (N.D. Cal. 2017). The Ninth Circuit has not prescribed a particular method either, but it has indicated that "the court may select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d at 730 n.4. In practice, district courts "equate financial interest with actual economic losses suffered" or "with potential recovery." *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-cv-3451-LHK, 2011 WL 566814, at *3 (N.D. Cal. 2011) (citations omitted); *see also Inchen Huang*, 289 F. Supp. 3d at 1052 ("[A]pproximate losses in the subject securities is the preferred measure." (quoting *Bruce v. Suntech Power Holdings Co.*, No. CV 12-04061 RS, 2012 WL 5927985, at *2 (N.D. Cal. Nov. 13, 2012)).

Both Lemak and the Friscia Family calculate their financial interest based on their approximate actual losses in MabVax securities and thus the Court uses that method. Based on the movants' representations in declarations submitted to the Court, Lemak possesses the largest financial interest. Lemak represents that it sustained aggregated losses of approximately $961,286.21. (Prongay Decl. Ex. C.) In contrast, the Friscia Family represents that it sustained losses of $238,365.10. (Sadeh Decl. Ex. C.) Lappi has sustained the smallest losses of any movant by representing a loss of $13,821.15. (Rosen Decl. Ex. 3.)

Although Lemak has the largest financial interest, the Friscia Family argues that nearly all of Lemak's claimed losses "must be disregarded" because the "figure is calculated upon a class period contrived by Lemak's counsel on the eve of the Lead Plaintiff deadline, and therefore, is the product of lawyer-driven gamesmanship[.]" (ECF No. 8 at 5.) According to the Friscia Family, the "PSLRA shuns such gamesmanship" and thus the Court should either "disqualify Lemak as a movant" or use the *Hardy* class action period to calculate losses. (*Id.* at 6–7) The Friscia Family recalculates Lemak's losses during the *Hardy* class action period to be $77,333.33.

(Hasson Decl. Ex. B.) Based on the Friscia Family's recalculation, the Friscia Family would become the proposed lead plaintiff with the largest financial interest. The Court rejects the Friscia Family's arguments.

As an initial matter, the Friscia Family identifies no authority—statutory or otherwise—permitting the Court to "disqualify" Lemak from appointment as lead plaintiff pursuant to the PSLRA based on alleged lawyer gamesmanship. By the PSLRA's plain terms, a court has "no occasion for comparing *plaintiffs* with each other on any basis *other than their financial stake in the case*." *In re Cavanaugh*, 306 F.3d at 732 (emphasis added). To the extent the PSLRA addresses lawyer gamesmanship, it does so through its imposition of the financial interest requirement. *See In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015) ("Congress's express purpose in mandating that the lead plaintiff (if otherwise qualified) be appointed on the basis of financial interest was to 'transfer primary control of private securities litigation from lawyers to investors.'" (citation omitted)). The PSLRA's comparison of proposed lead plaintiffs based on their "financial interest" is sensible because that interest can be objectively calculated notwithstanding the ever present possibility of lawyer gamesmanship.

Although the Friscia Family seeks to paint as gamesmanship the filing of the *Vinson* action with an extended class period by Lemak's proposed counsel, the Friscia Family has not identified a basis for the Court to disregard *Lemak*'s representations about *its* losses during the longer class period. Some district courts have policed a particular form of lawyer gamesmanship in the private securities class action litigation context: lawyer-driven creation of a wholly artificial group to arbitrarily enhance a proposed lead plaintiff's financial losses and secure the group's appointment as lead plaintiff. *See In re Petrobras Sec. Litig.*, 104 F. Supp. 3d at 621–22 (determining that various proposed lead plaintiff groups were "wholly artificial groupings"); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140-MHP, 2008 WL 3925289, at *8 (N.D. Cal. Aug. 22, 2008) (determining that a proposed lead

plaintiff group should not be appointed lead plaintiff because "it is clear that the [] [g]roup was created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel[.]" (internal quotations and citation omitted)); *but see Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1072–73 (W.D. Wash. 2011) (observing that some courts have permitted unrelated plaintiffs to aggregate losses and that "the rationale of courts in declining to appoint a group of unrelated plaintiffs varies widely"). Tellingly, the Friscia Family does not argue that Lemak is a wholly artificial group created by Lemak's counsel to manipulate the extent of the represented financial losses. Nor does such an argument appear tenable because the evidence before the Court shows that the individual and entities which comprise Lemak "had relationships prior to the litigation and are a self-constituted group, not one artificially created by the Court." *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 590 n.5 (C.D. Cal. 2009) (citation omitted). Individuals and entities that comprise a properly constituted group may aggregate their losses for the purposes of the lead plaintiff determination. *In re Advanced Tissue Sciences Secs. Litig. v. Advanced Tissue Scis., Inc.*, 184 F.R.D. 346, 350 n. 11 (S.D. Cal. 1998). Lemak's aggregated losses clearly outsize those of the Friscia Family.

The Friscia Family's request that the Court use the shorter *Hardy* class action period because of lawyer gamesmanship is also not persuasive. As a general matter, "courts usually . . . use the most inclusive class period and select as lead plaintiff the movant with the largest financial interest under that period." *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624–25 (E.D. Wis. 2009) (internal citations omitted); *see also Miami Police Relief & Pension Fund v. Fusion-io, Inc*., No. 13-cv-05368-LHK, 2014 WL 2604991, at *1 n.3 (N.D. Cal. June 10, 2014) ("For purposes of appointing a lead plaintiff, the longest class period governs."); *Eichenholtz*, 2008 WL 3925289, *2 ("Though a shorter class period may simplify the litigation, no benefits accrue by shortening the class period at this stage in the litigation."). This approach is guided by the belief that the class "should be

defined as the broadest, most inclusive potential class" at the lead plaintiff stage because it is the earliest stage in the litigation and occurs without the defendants' participation. *MGIC Inv. Corp.*, 256 F.R.D. at 624–25. The Friscia Family's request that the Court use the shorter *Hardy* class period stands contrary to this general practice.

Lemak compellingly argues that the Friscia Family's request is also equally susceptible to accusations of gamesmanship. "[I]t is unclear why a plaintiff would argue for a shorter class period at th[e] [lead plaintiff] stage, which would have the effect of reducing the class size and limiting the potential amount of damages, *unless it was in the best interest of that particular plaintiff only*." *Eichenholtz*, 2008 WL 3925289, at *2 (emphasis added). At the same time that the Friscia Family requests that the Court use the *Hardy* period for the purposes of appointing it as lead plaintiff, it opposes reopening notice to permit other MabVax shareholders to claim a larger financial interest than Lemak. (ECF No. 10 at 4 n.3.) Although the Friscia Family asserts that it opposes reopening notice because doing so would "reward" Lemak, the stronger inference is that the Friscia Family opposes such notice because the Family simply would not be a contender for lead plaintiff appointment under the longer *Vinson* class period by any means.[1]

Some courts have grafted additional "safeguards" onto the lead plaintiff inquiry to address concerns with the use of a longer class period identified in a consolidated private securities class action litigation. *See MGIC Inv. Corp.*, 256

---

[1] The Friscia Family also appears to contend that the Court should not use the *Vinson* class period because neither it, nor Lappi were aware of the *Vinson* action. (ECF No. 10 at 7.) It is not clear to the Court what their lack of awareness proves. The Friscia Family's losses can be calculated under the longer class period regardless of whether it was initially aware of the *Vinson* action and those losses would determine whether it is the presumptive lead plaintiff. The Family could have provided the Court with a revised approximation of financial losses, but it has not done so. Nor does the Family contend that its losses are greater under the *Vinson* class period than it initially represented.

F.R.D. at 625 (considering whether "the allegations supporting the longer class period are not obviously frivolous"); *see also In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 436 (S.D. Tex. 2010) (adopting *MGIC* approach to consider whether allegations supporting the longest noticed class period are "obviously frivolous"); *Lax v. First Merchants Acceptance Corp.*, Nos. 97 C 2715, 97 C 2716, 97 C 2737, 97 C 2791, 97 C 3767, 97 C 4237, 97 C 4013, 97 C 4236, 1997 WL 460136, at *5 (N.D. Ill. Aug. 11, 1997) (assessing whether there was a "good-faith basis for extending the class period").

Despite the Friscia Family's protestations of lawyer gamesmanship in *Vinson*'s extended class period, the Friscia Family does not argue that the *Vinson* class period is substantively defective under any of these "safeguards." The Court will also not *sua sponte* assess the *Vinson* class period under any of the judicially-fashioned "safeguards." Although the use of judicially-fashioned "safeguards" to assess longer class periods at the lead plaintiff stage might be deemed to serve judicial economy, it is unclear to this Court whether these measures are appropriate.

For one, when a court consolidates private securities class actions prior to the selection of a lead plaintiff, it has already decided that the class actions share common questions of law and/or fact that outweigh any differences. Beyond the limited inquiry regarding which plaintiff has the largest financial stake, the PSLRA does not task a court with delving into the sufficiency of the pleadings of *any* complaint that comprises a consolidated private securities litigation at the lead plaintiff stage. This Court has already consolidated the *Hardy* and *Vinson* actions. For the purposes of assessing which proposed lead plaintiff has the largest financial interest, the most sensible way to harmonize the different class periods is to adopt the longest class period set forth in *Vinson*.

Second, a court's use of a given class period at the lead plaintiff stage is generally not considered binding on the later stages of a private securities litigation case. *See Bodri v. GoPro, Inc.*, Nos. 16-cv-00232-JST; 16-cv-00338-JST; 16-cv-

00598-JST; 16-cv-00845-JST, 2016 WL 1718217, at *2 n.2 (N.D. Cal. April 28, 2016); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d at 434. Indeed, the class period may change due to subsequent developments in the litigation, which inevitably may impact who is an appropriate lead plaintiff.

Third, and relatedly, potential "obvious" defects in a longer class period are capable of correction through the normal operation of the adversarial process. To the extent a lead plaintiff has contrived a longer class period merely to enhance its financial stake, a defendant will have the opportunity to challenge that defect at the motion to dismiss stage. *See Union Asset Management Holding AG v. Sandisk Corp.*, No. 15-cv-01455-VC, 2016 WL 406283, at *5 (N.D. Cal. Jan. 22, 2016) (defendant successfully challenged longer class period on which the court had relied to appoint a lead plaintiff). This opportunity is reinforced, if not solicited by, the PSLRA's heightened pleading requirements and safe harbor provisions. *See, e.g., Mueller v. San Diego Entm't Partners, LLC*, 260 F. Supp. 3d 1283, 1291–92, 1293–94 (S.D. Cal. 2017) (discussing the PSLRA's adoption of "heightened pleading requirement[s]" "to curb abuses of securities fraud litigation"). Moreover, "unusually long class periods" may weaken claims of securities fraud, thus raising the potential risks of purported gamesmanship in the selection of a longer class period. *See In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1160–61 (C.D. Cal. 2007) (noting that an "unusually long" class period undermines inferences of scienter) (citing *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002)). Those risks should at least disincentivize "obviously frivolous" extensions of a proposed class period.

Finally, "[t]he district court's order designating a lead plaintiff . . . can be revisited if circumstances warrant." *Z–Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218 (9th Cir. 2000); *Union Asset Management Holding AG*, 2016 WL 406283, at *5 (finding reconsideration of lead plaintiff appointment necessary given that the appointed plead plaintiff might not have the largest financial

interest using the "more realistic" class period).  To the extent the longer *Vinson* class period proves to be inappropriate in the consolidated case, there are various circumstances which can warrant revisiting the class period and appointment of a lead plaintiff without judicial intervention at this stage.  Accordingly, the Court rejects the Friscia Family's request to use only the *Hardy* class period and concludes that Lemak has suffered the largest financial loss during the longer class period.

### 3. Lemak Satisfies the Typicality and Adequacy Requirements

In addition to possessing the largest financial interest, the PSLRA requires a proposed lead plaintiff to satisfy the requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Once a court determines which plaintiff has the largest financial interest, generally "the court must appoint that plaintiff as lead, unless it finds that [plaintiff] does not satisfy the typicality or adequacy requirements" of Rule 23(a).  *In re Cavanaugh*, 306 F.3d at 730, 732.  The movant "need only make a prima facie showing of its typicality and adequacy."  *Hessefort*, 317 F. Supp. 3d at 1056.  Lemak satisfies both requirements.

First, Lemak's claims are typical of the class.  The typicality requirement asks whether the presumptive lead plaintiff has suffered the same or similar injuries as absent class members as a result of the same conduct by the defendants and are founded on the same legal theory.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Frias*, 835 F. Supp. 2d at 1075 (citing *Schonfield v. Dendreon Corp.*, Nos. C07-800MJP, C07-869MJP, C07-870MJP, C07-898MJP, 2007 WL 2916533, at *4 (W.D. Wash. Oct. 4, 2007)).  The representative claims need only be "reasonably co-extensive" with those of absent class members, rather than "substantially identical" to them.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Lemak alleges that Defendants issued false and/or misleading statements about MabVax business and financial prospects, it purchased MabVax securities during the class period at artificially inflated prices, and suffered losses as a result.  (ECF No. 4-1 at 7–9; Prongay Decl. Exs. B, C.)  These allegations make

Lemak's claims reasonably co-extensive with and, therefore, typical of those of the absent class members.

Second, Lemak also satisfies the adequacy requirement. This requirement concerns whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The two primary adequacy inquiries are (1) whether there are conflicts of interest between the proposed lead plaintiff and the class and (2) whether plaintiff and counsel will vigorously fulfill their duties to the class. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). Lemak's interests in prosecuting this case are aligned with those of the class because Lemak seeks to recover for Defendants' allegedly fraudulent and misleading statements about MabVax business and financial prospects. *See Schonfield*, 2007 WL 2916533, at *4. The extent of Lemak's financial loss demonstrates to the Court that Lemak has a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Yanek v. Staar Surgical Co.*, No. 04-cv8007SJO(CWX), 2004 WL 5574358, at *6 (C.D. Cal. Dec. 15, 2004) (citation omitted). In addition, Lemak's proposed counsel, Glancy Prongay & Murray LLP, is experienced and qualified to prosecute securities class action litigation. (Prongay Decl. Ex. D); *see also Crihfield v. CytRx Corp.*, Nos. CV 16-05519 SJO (SKx); CV 16-05666 SJO (SKx), 2016 WL 10587938, at *5 (C.D. Cal. Oct. 26, 2016) (finding plaintiff represented by the firm was an adequate representative). Accordingly, Lemak is entitled to the PSLRA's presumption that it is the most adequate plaintiff.

### 4. The Friscia Family Has Not Rebutted the Presumption

The presumption that Lemak is the most adequate plaintiff to represent the class in the consolidated action may be rebutted only upon "proof" offered by a member of the proposed plaintiff class that Lemak either (1) "will not fairly and adequately protect the interests of the class" or (2) "is subject to unique defenses that render [it] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Absent proof that the proposed lead plaintiff with the largest

financial interest does not satisfy the requirements of Rule 23, this plaintiff is "entitled to lead plaintiff status." *In re Cavanaugh*, 306 F.3d at 732. "[A] district court's belief that 'another plaintiff may be 'more typical' or 'more adequate' is of no consequence.'" *Khunt v. Alibaba Group Holding Ltd.*, 102 F. Supp. 3d 523, 535 (S.D.N.Y. 2015) (quoting *In re Cavanaugh*, 306 F.3d at 732).

In opposing the appointment of Lemak, the Friscia Family argues that Lemak is "an atypical MabVax investor subject to disabling unique defenses." (ECF No. 10 at 8.) The Family raises the specter of atypicality by claiming that (1) "members of Lemak sold MabVax securities at artificially inflated prices in two public offerings" and (2) "Sandor, through John Lemak . . ., purchased MabVax common stock directly from MabVax pursuant to a unique, privately-negotiated agreement to which no other class member was a party." (*Id.*) The fundamental problem with the Friscia Family's arguments is that the publicly available documents on which the Family relies are insufficient to constitute *proof* that Lemak is subject to unique disabling defenses.

For one, the sole document the Friscia Family submits to raise the specter of the alleged receipt of non-public information by Lemak is a July 3, 2014 common stock sale agreement between MabVax and some fourteen investors, publicly available through the Securities and Exchange Commission's ("SEC") website. (Hasson Decl. Ex. E.) Without more, the Court will not rely on a publicly disclosed sale agreement filed with the SEC as proof that Lemak had access to non-public information in connection with that agreement. *See Beale v. EdgeMark Financial Corp.*, 164 F.R.D. 649, 656 (N.D. Ill. 1995) ("Speculation regarding access to non-public information, in the absence of any allegations or evidence of such information, does not impact on the issue of reliance."). Moreover, unlike the single authority on which the Family initially relied to rebut Lemak's status as the presumptive lead plaintiff, this is not a case in which Lemak acquired all or a majority of its shares through a privately negotiated agreement with MabVax. *See In re Critical Path*, 156 F. Supp. 2d 1102, 1110 (N.D. Cal. 2001).

Second, although the Friscia Family asserts that Lemak sold securities at "artificially inflated" prices, the Family submits only publicly available SEC documents showing prospectuses for possible sales of MabVax securities by multiple investors. (Hasson Decl. Ex. C (Nov. 12, 2014 prospectus), Ex. D (Jan. 28, 2016 prospectus).) At most, the prospectuses show that the listed security holders could resell certain stock "from time to time" and expressly qualify that "the selling securityholders may sell the shares of common stock described in this prospectus in a number of different ways and at varying prices." (Hasson Decl. Ex. C at 1; *see also id*. Ex. D at 3.) The Family has not produced evidence of any actual sales by Lemak. In any event, the fact that Lemak may have sold shares would not alone show that Lemak is subject to a potentially unique disabling defense on this basis. The more appropriate inquiry would be whether Lemak is a net purchaser of MabVax securities on the one hand, or a net seller or gainer on the other. *See Deering v. Galena Biopharma, In*c., Nos. 3:14-cv-00367-SI; 3:14-cv-00389-SI; 3:14-cv-00410-SI; 3:14-cv-00435-SI; 3:14-cv-00558-SI, 2014 WL 4954398, at *11 (D. Or. Oct. 3, 2014) (observing that "courts around the country consistently have rejected applications for lead plaintiff made by net sellers and net gainers, recognizing the difficulty of proving damages at trial"). The Friscia Family makes no such argument.

Even if *later* evidence may show that Lemak should be disqualified for the reasons the Friscia Family raises, the Family does not offer "proof" that Lemak should be disqualified *now*. *See In re ForceField Energy Inc. Sec. Litig.*, Nos. 15 Civ. 3020 (NRB); 15 Civ. 3141 (NRB); 15 Civ. 3279 (NRB), 2015 WL 4476345, at *5 (S.D.N.Y. July 22, 2015) ("By directing district courts to choose lead plaintiffs at the earliest stage of class litigation, Congress expressed a judgment that the benefits of appointing a high-loss plaintiff early in litigation would outweigh the costs of occasionally having to replace the lead plaintiff later on."). Accordingly, the Court concludes that the Friscia Family has failed to rebut the presumption that Lemak should be appointed Lead Plaintiff. The Court appoints Lemak as such.

## C. Approval of Selection of Lead Counsel

Once the court has appointed a lead plaintiff, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). A court generally accepts the appointed lead plaintiff's choice of counsel unless it appears necessary to appoint different counsel to "protect the interests of the class." 15 U.S.C. § 78u—4(a)(3)(B)(iii)(II)(aa). Lemak has selected Glancy Prongay & Murray LLP as Lead Counsel. (ECF No. 4.) Because Lemak has made a "reasonable choice of counsel," the Court "defer[s] to that choice." *See Cohen v. U.S. Dist. Court for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009).

## CONCLUSION & ORDER

For the foregoing reasons, the Court hereby **ORDERS** that:

1. The Court **DENIES** the motions filed by Kevin Lappi (ECF No. 3) and the Friscia Family (ECF No. 5) and **GRANTS** Lemak's motion in its entirety (ECF No. 4).

2. The Court **CONSOLIDATES** *Hardy v. MabVax Therapeutics, et al.*, No. 18-cv-01160-BAS-NLS, and *Jerry Vinson v. MabVax Therapeutics, et al.*, No. 18-cv-01819-BAS-NLS. Each document filed by a party in the consolidated litigation shall bear the following caption: *In re MabVax Therapeutics Securities Litigation*, No. 18-cv-01160-BAS-NLS. All filings must only be made in the consolidated case.

3. The Court **APPOINTS** Lemak as Lead Plaintiff and Glancy Prongay & Murray LLP as Lead Counsel in the consolidated action.

4. Lemak shall file a consolidated complaint **no later than October 3, 2018**. Defendant shall respond to the consolidated complaint **no later than October 31, 2018**.

**IT IS SO ORDERED.**

**DATED: September 6, 2018**

Hon. Cynthia Bashant
United States District Judge